IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| DUAMEL SANTIAGO-RAMOS, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTORIDAD DE ENERGIA ELECTRICA DE P.R., ET AL.,<br><br>Defendants. | CIV. NO.: 11-1987(JAG/SCC) |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiffs' amended class certification motion, Docket No. 68, which was referred to the undersigned for report and recommendation by the presiding district judge, Docket No. 80. After recommending denial of AEE's motion for summary judgment,[1] we set the motion for an evidentiary hearing, Docket No. 90, which was held on February 11, 2014,

---

**1.** That recommendation was subsequently adopted by the court in full. *See* Docket No. 101.

Docket No. 107.

Unfortunately, even after the hearing the parties have not done a very successful job of putting this motion in the proper context. Of course, it is Plaintiffs' burden to show that certification is justified, and to that end, they have filed successive motions and memoranda,[2] none of which are particularly clear or helpful.[3] At the hearing, only Plaintiff Duamel Santiago

---

2. These include a motion, Docket No. 67, an amended motion, Docket No. 68, a reply to AEE's opposition, Docket No. 78-1, a supplemental motion attached without leave to an unrelated motion, Docket No. 103, and another supplemental motion filed without leave or cause, Docket No. 105.

3. The operative motion's discussion of commonality, which we consider to be the primary issue here, consists of just two paragraphs taking up perhaps a third of a page. *See* Docket No. 68, at 4. The motion's discussion of predominance is no more thorough. *See id.* at 5–6. The more recent supplemental brief is somewhat more complete, but it does not seriously apply the case law to the facts; instead, it makes conclusory statements about the putative class's satisfaction of the legal requirements. Moreover, it—like Plaintiffs' related motions—cites a great deal of old case law without showing that it is still viable. As another court in this district has explained, the recent and rapid changes to class action law make this practice dangerous. *See P.R. College of Dental Surgeons v. Triple S Mgmt. Inc.*, 290 F.R.D. 19, 26 (D.P.R. 2013) ("Given the rapid developments in class action litigation, parties are advised to cite class action authority that is even a few years old only after evaluating its continuing vitality against recent pronouncements." (internal quotations omitted)).

testified for Plaintiffs, and the bulk of his testimony was an improper attempt to admit expert accounting testimony through a non-expert. AEE, for its part, submitted an opposition to the certification motion that merely repeated arguments that were ultimately rejected in our report and recommendation on summary judgment. At the hearing, it neither cross-examined Santiago nor presented any evidence of its own, and though it requested—and was granted—leave to file a memorandum in opposition, it has failed to do so. So at the end of the day, we are left to consider a haphazard offer of proof by Plaintiffs, with no response from AEE.

## I.  Analysis

Plaintiffs wish to certify the following class:

> All natural persons that since October 5, 2005 have paid a fuel adjustment charge, or any other surcharge, billed by AEE that was used to pay or subsidize any churches; charities; religious, ideological, political, or partisan activities; or political subdivisions of the Commonwealth of Puerto Rico or its municipalities. Excluded from this class are employees of AEE, as well as its officers, directors, legal representatives, and their heirs and successors; the federal judges, magistrates, their employees, and other court staff assigned to this case; and all persons within the third degree of relationship to any of the persons named above.

Docket No. 105, at 2–3.[4] To certify this class, Plaintiffs must satisfy all of the requirements of Rule 23. First, they must meet the numerosity requirement by showing that the class "is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Second, they must meet the commonality requirement, by showing that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Third, they must meet the typicality requirement, showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(c). And fourth, they must meet the adequacy of representation requirement, by showing that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(d). Finally, the Court must find that the suit before is one of the types of class actions specified in Rule 23(b), here, *see* Docket No. 105, at 13, by showing that "the questions of law or fact common to class members predominate over any ques-

---

**4.** We have drawn this definition from Plaintiffs' most recent filing, but we have edited their language for clarity and grammar. We also note that Plaintiffs have regularly changed the precise definition of their proposed class without saying so. We use this description only because it is from there most recent filing, and so we assume it represents their current proposal.

tions affecting only individual members." FED. R. CIV. P.
23(b)(3). This is frequently referred to as the predominance
requirement, and it is often considered alongside commonality
because the analyses blend into one another. *See, e.g.*, *Sullivan
v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011).

### A.  Numerosity, Commonality, and Predominance

The numerosity requirement is quite obviously satisfied
here. PREPA has over one million subscribers, and it is
undisputed that most of them pay a fuel charge. Thus, the
proposed class is sufficiently numerous. *See In re Nexium
Antitrust Litig.*, 296 F.R.D. 47, 51 (D. Mass. 2013) ("Courts have
generally held that classes exceeding forty plaintiffs are
deemed sufficient . . . ."). As such, we will jump right into the
related commonality and predominance analyses.

As we have described it previously, the heart of Plaintiffs'
case is a claim that AEE collects from the putative class
members a fuel surcharge, the proceeds of which are put
toward various unconstitutional uses. Specifically, say Plain-
tiffs, the proceeds are given to religious, charitable, and other
groups in a manner that forces the putative class members to
associate with the beneficiaries in violation of the class mem-
bers' First Amendment rights. At the class certification hearing,

Plaintiffs' counsel clarified on the record that these claims relate exclusively to certain statutory subsidies that benefit the groups with whom Plaintiffs say they are forced to associate.

From this statement of the case alone it is clear that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The class is defined to include only surcharge-paying natural persons. The claims of *each* of these individuals, without exception, will turn on this fact, as well as on the legality of the various subsidy programs. Thus, each class member can be said to "'have suffered the same injury.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2451, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). More importantly, the legality or illegality of these subsidy programs will determine the validity of every class member's claim. Thus, a class action here would be capable of "'generat[ing] common *answers* apt to drive the resolution of the litigation.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)). We conclude, therefore, that the commonality requirement is satisfied.

As to predominance, the analysis above applies with much the same force. The question of the subsidies' legality will be

the most important issue before the Court going forward. More to the point, there is essentially nothing about the individual plaintiffs, beyond the fact of their paying the surcharge, that is relevant to their individual claims. Whatever else might be said of the individual class members, if the subsidies are legal, every member is unharmed; if the subsidies are illegal, every member is harmed. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007) ("The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the calss as a whole, . . . predominate over those issues that are subject only to individualized proof."). Every member of the putative class is harmed—or not harmed—to the same extent and in the same manner. The illegality of the subsidies, then, is a "common predicate to liability for multiple parallel claims." *Tardiff v. Knox Cnty.*, 365 F.3d 1, 5 (1st Cir. 2004).[5] The existence of such a common

---

**5.**   Other cases have likewise found that the predominance requirement is satisfied in constitutional class actions where the individual circumstances of the class members are functionally similar and the primary issue to be decided is the constitutionality of the defendant's actions. *See, e.g.*, *Brown v. Kelly*, 609 F.3d 467, 484 (2d Cir. 2010) (finding predominance requirement met where all of the class members' claims

predicate "weighs in favor of class action status." *Id.* As such, there is no doubt that common questions regarding the legality of the subsidies will predominate over any question affecting only individual class members. Because the putative class is "sufficiently cohesive to warrant adjudication by representation," *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), we find the predominance requirement satisfied.[6] *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 146 (2d Cir. 2001) (holding that the situation presented where all of the putative class members were "allegedly aggrieved by a single policy of the defendants" is "precisely the type of situation for

_____

arose from an allegation that the defendant was enforcing an unconstitutional statute); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 229–30 (2d Cir. 2006) (holding that predominance requirement was satisfied when the class members' claims were all premised on the defendant's "blanket policy"); *MacNamara v. City of New York*, 275 F.R.D. 125, 146 (S.D.N.Y. 2011) (similar); *Lehr v. City of Sacramento*, 259 F.R.D. 479, 483 (E.D. Cal. 2009) (similar); *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 708 (E.D. Penn. 2009) (similar).

**6.** We note that Plaintiffs here request damages, which "does weigh against class action status" because each class member "could in principle testify separately as to" his or her individual harm. *Tardiff v. Knox Cnty.*, 365 F.3d 1, 6 (1st Cir. 2011). Nonetheless, this "does not ordinarily defeat predominance where," as here, "there are still disputed common issues as to liability." *Id.*

which the class action device is suited"), *overruled on other grounds by, In re IPO,* 471 F.3d 24 (2d Cir. 2006).

## B. Typicality and Adequacy

Having established that the proposed class is sufficiently numerous, and that its claims are sufficiently common, to satisfy the Rule, we move on to the other Rule 23(a) requirements: typicality and adequacy. As to typicality, there is little doubt that the claims of the named plaintiff are typical of those of the putative class as a whole, as they rest on the same factual and legal bases, and we will not be detained further by this requirement. *See Shanley v. Cadle,* 277 F.R.D. 63, 69 (D. Mass. 2011) ("The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as to the injuries of the class and when plaintiff[']s claims and those of the class are based on the same legal theory." (internal quotations omitted)). Whether plaintiffs meet the adequacy requirement, however, is a more difficult question, and one to which we give our attention below.

Given an opportunity to make arguments during the certification hearing, AEE focused its energy almost entirely on the question of adequacy. In particular, AEE focused on the fact that there would surely be conflicts among the class

members. For instance, with regard to the subsidies to churches, a member of a subsidy-receiving church may not want to participate in a lawsuit that might end the subsidy. As such, his interests would be opposed to those of the class representative.

To this argument we say, first of all, that if the subsidy is illegal, the churchgoer's rights are violated whether or not he likes for his church to receive the subsidy money, because he, like every other class member, is being *compelled* to associate with that church. More to the point, the interest of a putative class member in maintaining an allegedly illegal policy simply cannot be the basis for denying class certification. *See Matamoros v. Starbucks Corp.*, 699 F.3d 129, 138 (1st Cir. 2012);[7] *see*

---

7.  In *Matamoros*, the plaintiffs sought to certify a class of Starbucks baristas to claim that Starbucks had violated Massachusetts law by splitting their tips with certain shift supervisors. *See Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2011). Starbucks opposed certification on the grounds that former baristas who had been promoted to shift supervisors would oppose the suit, as it would be to the detriment of their present economic interests. *See id.* The First Circuit noted that the trial court had "rejected this contention, reasoning that an interest in certain putative class members in maintaining the allegedly unlawful policy is not a reason to deny class certification." *Id.* (internal quotations omitted). The First Circuit explicitly agreed with the trial court's rationale. *Id.*

*also Sherman ex rel. Sherman v. Township High Sch. Dist. 214*, 540
F. Supp. 2d 985, 993–94 (N.D. Ill. 2008) (rejecting adequacy
challenge in a suit concerning a statute's constitutionality,
because "[w]hile it may be true that some plaintiff class
members support the [statute], such differences of opinion do
not amount to 'antagonistic' interests sufficient to undermine
class certification").   There does not need to be "perfect
symmetry" among the class members' interests, and so long as
the intra-class conflict does not "overbalance the common
interests of the class members as a whole," the representative
may be considered adequate. *Matamoros*, 699 F.3d at 138. As to
any putative class member "uncomfortable with the attack
launched by the plaintiff class on" AEE's subsidies, she "has
the right to opt out of the class. The availability of this option
is an important factor in weighing the effect of a largely
hypothetical conflict on a class-certification decision." *Id.* at
139. Given this protection and the fact that the hypothetical
class member would be objecting to an allegedly illegal
practice, we do not believe that the chance for intra-class
conflict is significant. We therefore reject AEE's argument on
these grounds. Furthermore, because the named plaintiff is an
individual who faces the same harms as every class member,

and because he clearly opposes AEE's challenged conduct, we do not doubt that he is prepared to represent the class. The adequacy requirement is therefore satisfied.

## C. Superiority

We have found that the putative class meets the four requirements of Rule 23(a) and the predominance requirement of Rule 23(b)(3). We now consider Rule 23(b)(3)'s other concern: whether a "class action is superior to other available methods for fairly and efficiently adjudicating" this controversy. This requirement is intended to ensure that the class action would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615 (internal quotations omitted). We believe that this requirement is met here. Plaintiffs' claims are fairly straightforward: they ask whether certain subsidies are constitutional, and, if they are, whether Plaintiffs may recover damages. Moreover, the sheer size of the putative class would make individual litigation nearly impossible. For these reasons, we believe that there are significant savings in time, expense, and effort to be realized from the class action form. Against that, we see no

special risk of unfairness beyond that which exists in any other class action suit. Accordingly, we find the superiority requirement met.

### D. Class Counsel

As part of an order certifying a class, the Court must appoint class counsel. FED. R. CIV. P. 23(c)(1)(B). In doing so, the Court *must* consider (1) "the work the counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). However, the court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

Lorenzo Palomares-Starbuck seeks appointment as class counsel, and Luis Rivera-Rodríguez, Ricardo Izurieta-Ortega, and Eric Quetglas-Jordan seek appointment as "Co-Lead Class Counsel."[8] Docket No. 105, at 13. In support of their appointm

---

**8.** A few other attorneys are also named as putative "Co-Lead Class Counsel," but they have not even submitted *curriculum vitae* to the

ent, they say nothing beyond the fact that "[c]ompetency of counsel is presumed. Absent basis for questioning competence of class counsel, named plaintiffs' choice of counsel will not be disturbed, and plaintiffs bear no affirmative burden to allege facts establishing the competence of counsel." *Id.* For this proposition, they cite a 1991 district court case from California. *See Mateo v. M/S KISO*, 805 F. Supp. 761, 771 (C.D. Cal. 1991).

Whatever the validity of the presumption on which putative counsel rely,[9] we intend to conduct a more thorough

---

Court, and so we are in no place to consider their adequacy. We recommend, therefore, that they not be appointed.

**9.** In 2003, Rule 23 was amended to add subsection (g), which directs district courts to consider certain specific factors in appointing class counsel. To a large extent, Rule 23(g) merely codified then-existing law. *See* Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177, 177–78 (2003) ("Although the rule amendments at first seem like a sweeping overhaul, in reality the revisions embody the codification of class action practice over the past thirty-six years."). Nonetheless, Rule 23(g) was adopted out of an express recognition "that the selection and activity of class counsel are often critically important to the successful handling of a class action." FED. R. CIV. P. 23(g) advisory committee's note. We agree with the advisory committee that the selection of class counsel is critical to protecting the rights of the class members; as such, we think a more searching inquiry is called for than was the norm in the pre-2003 cases.

inquiry. This is first of all because we agree with the comment-
ators that the requirement of adequate counsel is both import-
ant and frequently overlooked.[10] And second, it is because
based on what we have thus far seen in this case, we harbor
certain doubts.

We will start with counsel's experience handling complex
litigation. Atty. Palomares's CV lists a number of opinions in
cases on which he has worked, but it doesn't identify them any
further. *See* Docket No. 103-2, at 3. Reviewing the cited cases,
none appears to be a class action or otherwise particularly
complex litigation. Similarly, our own search reveals no
previous class actions in which Atty. Palomares has served as
counsel. Neither Attys. Rivera or Izurieta offer any evidence of

---

**10.** According to the leading commentator on this issue, *see In re Relafen
Antitrust Litig.*, 231 F.R.D. 52, 85 (D. Mass. 2005), "most courts
routinely, reflexively, and presumptively certify class counsel as
adequate without a sufficiently probing inquiry," Linda S. Mullenix,
*Taking Adequacy Seriously: The Inadequate Assessment of Adequacy in
Litigation and Settlement Classes*, 57 VAND. L. REV. 1687, 1699 (2004). This
can lead to "serious representation problems" including "lack of
diligence in prosecuting the action, ineffective assistance of counsel as
a consequence of inexperience or underfinancing, abandonment of
parties or claims, self-dealing, collusion or other ethical improprieties,
and most importantly, the conduct and conclusion of settlement
agreements." *Id.* at 1702.

complex litigation they have handled, and, once again, our own search reveals none. These facts weigh against the appointment of Attys. Palomares, Rivera, and Izurieta. Atty. Quetglas, on the other hand, seems to have extensive experience in complex litigation. His CV lists four multi-district litigation cases in which he is currently involved, as well as several other class and mass tort actions. *See* Docket No. 105-2, at 1–2. This weighs in favor of his appointment as class counsel.

Next, we consider the quality of putative counsel's work in this case and elsewhere. This is an important consideration, especially where the attorneys seeking appointment have not shown themselves to be experienced in class action litigation. *See D.S. ex rel. S.S. v. N.Y.C. Dep't of Educ.*, 255 F.R.D. 59, (E.D.N.Y. 2008) ("The adequacy of class counsel requirement is satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and arguments during the early stages of the cases." (internal quotations omitted)). As we have said, however, the quality of the class-certification briefing has been marginal. Similarly, counsel's performance at the class certification hearing was unimpressive, revolving primarily around attempts to introduce

inadmissible expert testimony through a non-expert witness. At the motion to dismiss stage, too, the then-presiding judge found some of Plaintiffs' arguments deficient. *See* Docket No. 28, at 21 ("Plaintiffs also allege an equal protection violation, but they fail to present a coherent or well-developed argument in support of their claim . . . ."). At the motion for summary judgment state, moreover, Plaintiffs completely failed to point out the case—*Smith v. Bayer*, 131 S. Ct. 2368 (2011)—or the facts—that none of the plaintiffs here were also plaintiffs in the state cases—that would have most directly helped their case.[11] *See* Docket No. 94, at 9 n.6; *see also* Docket No. 90, at 2 n.1 (noting inadequacies in Plaintiffs' response to AEE's motion for summary judgment). We note, too, that in one of the decisions cited by Atty. Palomares in his CV, the court expressed similar skepticism towards his work product. *See Quiles-Rivera v. Marrero-Figarella*, Civ. No. 05-1627(PG), 2007 U.S. Dist. LEXIS 20204, *11 (D.P.R. Mar. 21, 2007) ("Notwithstanding having knowledge of the frivolity of their claim, and even in the face of a request for Rule 11 sanctions, plaintiffs carried on stead-

---

**11.** In our report and recommendation on AEE's motion for summary judgment, we warned Plaintiffs that "much more is expected from them in terms of diligence and effort." Docket No. 90, at 2 n.1.

fastly claiming they had stated a claim upon which relief could be granted."); *see also id.* at *12 & n.3 (expressing frustration with Atty. Palomares's "lack of good faith throughout the litigation"); *Milanes v. Holder*, 783 F. Supp. 2d 284, 284 (D.P.R. 2011) (similar); *Musa-Vega v. Rosario-Melendez*, Civ. No. 09-2003(JAF), 2010 WL 5110120, at *2 (D.P.R. Dec. 13, 2010) (similar); *Gonzalez v. Toledo*, Civ. No. 08-1869(SEC), 2009 WL 1767561, at *5 n.4 (D.P.R. June 16, 2009) (similar).

This history of pursuing meritless claims,[12] to the aggravation of the courts in front of whom he practices and the detriment of his clients, does not bode well for Atty. Palomares's ability to adequately represent the class here. Keeping in mind that we make this appointment not in consideration of the named plaintiffs' right to choose the counsel of their liking, but in consideration of the rights of the absent class members, who will have no say in choosing their representation, we conclude that Palomares's litigation history militates against his appointment.[13]

---

**12.** In the next section of this opinion, we note that the core claims in this suit, too, may lack merit.

**13.** There is also an ethical matter regarding Atty. Palomares currently pending before Chief Judge Delgado, which concerns whether Atty.

Taking all of this together, we conclude that of the putative class counsel, only Atty. Quetglas is qualified,[14] and we recommend that if the Court certifies the class, that he be appointed class counsel.

### E.  Other Matters

The crux of Plaintiffs' case are two First Amendment claims, one on freedom of association grounds and one on establishment clause grounds. Each of these claims survived an early motion to dismiss. *See* Docket No. 28. Since the motion to dismiss was decided, however, new information has come to

---

Palomares properly used funds disbursed to him by the court in trust for other individuals. *See Advocating Disability Rights v. P.R. Ports Auth.*, Civ. No. 05-1185(ADC), slip op. at 2 (D.P.R. March 13, 2012); *see also id.*, slip op. at 1–3 (D.P.R. Feb. 27, 2012). The matter has not yes been ruled upon, but the allegations' seriousness, and the evidence adduced in their favor, further militates against Palomares's appointment. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 36 n.12 (1st Cir. 2009) ("Class counsel are fiduciaries to the class."); *see also Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (2d Cir. 2011) ("Class counsel owe a fiduciary obligation of particular significance to their clients when the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf.").

**14.** Atty. Quetglas appeared in this case only recently. The deficient motions discussed above were filed by the other putative class counsel.

light that leaves us far more skeptical about Plaintiffs' core claims. Specifically, it is now clear that the establishment and association claims are premised in their entirety on certain statutory subsidies. Plaintiffs' core claims, therefore, turn on the legality or illegality of these statutes. Looking at what those statutes provide, we find it highly unlikely that the majority of them are unconstitutional.

AEE has filed a list of the subsidies at issue. *See* Docket No. 97-1. These statutes subsidize the electrical rates paid by: (1) students and the elderly whose energy use is below a certain threshold; (2) users of equipment used to save lives; (3) low income consumers; (4) consumers with certain medical disorders; (5) hotels and guest houses; (6) local sewer authorities; (7) certain small businesses; (8) residential condominiums for their common areas; (9) consumers who use automatic debit; and (10) churches and social welfare organizations. *See id.* In upholding Plaintiffs' free association claims at the motion to dismiss stage, the Court, based on representations in Plaintiffs' filings, cited cases forbidding "'compulsory subsidization of ideological activities.'" Docket No. 28, at 7 (quoting *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 237 (1977)). But with regard to subsidies (1) through (9), there is no obvious speech at issue.

Instead, these subsidies represent governmental policies to provide special support to certain populations. Even if Plaintiffs disagree with the ideologies that led the government to enact these policies, they may nonetheless be compelled to pay for them.[15] *See Bd. of Regents of Univ. of Wisc. Sys. v. Southworth*, 529 U.S. 217, 229 (2000) ("The government, as a general rule, may support valid programs and policies by taxes or other exactions binding on protesting parties."). Government support to private speech, such as the churches and nonprofits covered by subsidy (10), is a closer issue. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005) (noting that an individual may not be "required by the government to subsidize" a

---

**15.** It would be different if the Government were forcing Plaintiffs, as individuals, "to express a message [they] disagree[] with." *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 557 (2005); *see also, e.g., Wooley v. Maynard*, 430 U.S. 705 (1977) (holding that by imposing the motto "Live Free or Die" on a Maryland couple's license plate, the state was impermissibly compelling the couple to endorse political speech with which the couple disagreed). On their face, however, subsidies (1) through (9) cannot be reasonably construed to fit this category of compelled speech, as they require no speech from Plaintiffs as individuals. We note, moreover, that the Government *may* compel, through taxes and other exactions, citizens to give monetary support to Governmental speech to which they object, so long as the citizens themselves are not compelled to speak. *See Johanns*, 544 U.S. at 565 & n.8.

private entity's speech).  But even these subsidies may be valid, so long as their implementation is viewpoint neutral.[16] *See, e.g.,* Eugene Volokh, *Freedom of Expressive Association and Government Subsidies*, 58 STANFORD L. REV. 1919, 1930–31 (2006). Even Plaintiffs' establishment clause claims may fall flat, assuming that the church subsidy is applied in a non-discriminatory manner, and given that it also applies to other, secular nonprofits. *See Walz v. Tax Comm'n of N.Y.C.*, 397 U.S. 664 (1970) (upholding a property tax exemption for religious properties that was also given to a wide array of nonprofits); *see also Bd. of Educ. of Kiryas Joel Village School Dist. v. Grumet*, 512 U.S. 687, 706–07 (1994) (suggesting that some state benefits to religion may be permissible, so long as "neutrality as among

---

**16.** We think that this case is different than those that have found unconstitutional orders of public utility commissions permitting utilities to pass on the cost of their charitable contributions to consumers. *See, e.g., Cahill v. Pub. Serv. Comm'n*, 76 N.Y.2d 102 (1990). In such a case, the utility has made a choice to support specific charities, presumably on account of their specific ideologies. By contrast, the subsidy here seems to apply generally to social service organizations, which would make it viewpoint neutral. (Of course, if the subsidy is not meted out in a viewpoint-neutral manner, a different result might obtain.)

religions" is honored).[17]

For these reasons, we think it much better to delve further into this case's merits before certifying what might end up being an action without any real likelihood of success. This is especially true given the substantial costs that will come with notifying what are likely hundreds of thousands of class members. As such, we think that ordering the parties to engage in discovery on an expedited schedule, culminating in dispositive motion practice, is the better course.

## III.    Conclusion

We find that the class meets the requirements of Rule 23(a) and Rule 23(b)(3), and that it therefore merits certification. We find, moreover, that Atty. Quetglas is competent to be appointed class counsel (though the other putative counsel are not). We do not, however, recommend that a certification order issue at this time. Instead, we RECOMMEND that the presiding judge hold the matter of certification in abeyance. We

---

**17.** In discussing these subsidies, we think it of no moment that the money is collected through Plaintiffs' utility bills, rather than by general taxes. *See Johanns*, 544 U.S. at 562 ("The compelled-subsidy analysis is altogether unaffected by whether the funds for the promotions are raised by general taxes or through a targeted assessment." (emphasis omitted)).

further RECOMMEND that the presiding judge order discovery on the underlying claims on an expedited schedule, with a dispositive motion deadline set for the next several months. If Plaintiffs' core claims survive summary judgment, we would RECOMMEND that the class be certified at that time.

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 3rd day of March, 2014.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE